UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| AGATHA LYNN MCGUIRE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. ) | No. 7:18-CV-84-REW <br><br> OPINION AND ORDER |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Agatha McGuire appeals the Commissioner's denial of her application for disability benefits.[1] The parties filed dueling summary judgment motions. The Court **GRANTS** the Commissioner's motion (DE #10) and **DENIES** McGuire's motion (DE #8) because substantial evidence supports the findings resulting in the administrative decision, and the decision rests on proper legal standards.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

McGuire is currently 62 years old. *See, e.g.*, R. at 65. She alleges disability beginning on May 5, 2014. *See, e.g.*, R. at 127. McGuire applied for benefits on October

---

[1] McGuire applied for both Title II disability insurance benefits and Title XVI supplemental security income, which the Court collectively refers to as "benefits." *See, e.g.*, R. at 41. The "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at \*3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at \*3 (E.D. Mich. Jan. 14, 2013), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at \*4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI.").

1

22, 2014. R. at 217-27. The SSA denied her claims initially on January 5, 2015, *see* R. at 127-30, and upon reconsideration on July 14, 2015. *See* R. at 136-50. McGuire then filed a written request for a hearing on September 9, 2015. R. at 151-52. Administrative Law Judge (ALJ) Deborah Foresman held a video hearing on April 11, 2017. R. at 39-64. At the hearing, attorney Randy Clark represented McGuire. R. at 42. Claimant and impartial vocational expert (VE) Andrew Beale testified. R. at 45-63. The ALJ subsequently denied McGuire's claims on September 25, 2017. R. at 17-32. The Appeals Council denied review, and thus upheld the ALJ's decision, on July 5, 2018. R. at 1-3.

The ALJ made several particular findings in the required sequence. She determined that McGuire did not engage in substantial gainful activity from May 5, 2014, through the date of decision. R. at 22. The ALJ next determined that McGuire had severe impairments. R. at 23. However, ALJ Foresman then found that McGuire did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. at 24-25. The ALJ further made a detailed residual functional capacity (RFC) finding. R. at 25-31. Considering the RFC, Judge Foresman found McGuire "capable of performing past relevant work as a patient transporter" and, also, able to perform two separate representative jobs in the national economy (order puller and counter supply worker). *See* R. at 31. Based on these considerations, the ALJ ruled that McGuire was not under a disability from May 5, 2014, through the date of decision. *See* R. at 21, 32. Unsatisfied with the result of the SSA's administrative process, McGuire turned to federal court for review.

## II. ANALYSIS

### A. *Standard of Review*

The Court has carefully read the ALJ's lengthy decision, the transcript of the administrative hearing, and the apt parts of the entire (voluminous—1,900+ page) administrative record. The Court has scrutinized the record, while primarily focusing on the portions to which the parties specifically cite. *See* DE #7 (General Order 13-7), at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th

Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Acting Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110. At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Id.* At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Id.* At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Id.* Finally, at Step 5, when the burden shifts to the Acting Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

B.  *The ALJ did not reversibly err.*

McGuire makes two overarching arguments: that substantial evidence does not support the ALJ's decision, and that the ALJ erred by failing to apply the Grid Rules. *See* DE #8-1, at 1.[2] The Court evaluates each in turn.

**1. Substantial evidence supports the ALJ's decision.**

McGuire first argues that the ALJ "apparently ignored" Exhibit 19E, which is a collection of job descriptions. *See* DE #8-1, at 2-3; R. at 332-40. McGuire claims that the pertinent job description says that the position's "physical demand requirements are in excess of those for Medium Work." *See* DE #8-1, at 2-3, 8. Judge Foresman generally

---

[2] McGuire makes a number of conclusory, unreasoned assertions in the briefing. *See, e.g.*, DE #8-1, at 5-6 (blithely asserting, with no analysis or record citation, that the RFC generally is "not supported by substantial evidence"). The Court properly limits analysis to particularized arguments. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (internal alterations removed)); *Howard v. City of Girard*, 346 F. App'x 49, 52 (6th Cir. 2009) (citing cases); *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999); *Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997); *United States v. Crumpton*, 824 F.3d 593, 619 n.7 (6th Cir. 2016). Even in that light, the Court has charitably tried to construe Claimant's brief to raise arguments mentioned only in sections other than "Argument," such as under the "Statement of Material Facts" heading.

limited Claimant to medium work, though with a variety of specific parameters. *See* R. at 25.

As an initial matter, the ALJ plainly did not ignore Exhibit 19E; to the contrary, she specifically asked McGuire about it during the video hearing. *See* R. at 47-48. Indeed, Claimant (contradictorily) acknowledges that the ALJ "was aware of" the exhibit. DE #8-1, at 2, 8. Regardless, the Court sees nothing in Exhibit 19E concerning a job titled "patient transporter." The entries for "laundry helper" and "radiology worker" do carry the work-level notation McGuire claims. *See* R. at 333 & 340. The VE testified that McGuire could return to her "patient transporter" job, as actually and generally done. *See* R. at 59. The Court sees no merit to this textually unsupported argument.[3]

To the broader point, as the Acting Commissioner notes, *see* DE #10, at 7-8, even if McGuire's Exhibit 19E argument had merit—*i.e.*, if the "radiology worker" entry equates to the "patient transporter" job, *see* R. at 339 ("The Radiology Worker is responsible for . . . transporting the patients[.]"), 342-43; DE #8-1, at 2-3 (attempting to liken the positions), and the pertinent job in fact necessitates work in excess of the medium level as actually performed—the ALJ independently found, at step 5, that

---

[3] The answer likely lies in the details. McGuire testified that her supervisor, for more than a year, structured the job so that Claimant did not have to exert at the 75-80 lb. level. *See* R. at 52 (testimony of McGuire, indicating she got help with "really heavy" work materials, which she equated to "75 to 80 pounds"). Later, she suggested those modifications had been in place for the last year of work. *Id.* at 56–57. The VE addressed the transporter position, after hearing McGuire's testimony, and testified she could perform the job as defined by the DOT, as McGuire performed it, and as the market generally requires. *See id.* at 59–60; *id.* at 31 (relying on VE as basis of finding). Whether ARH's 2005 job description called the job medium+ or not, how McGuire actually did the job obviously matters for purposes of the assessment. *See Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995) (considering whether claimant could perform "functional demands and duties of a past job as actually performed" or "of the occupation as generally required by employers throughout the national economy").

McGuire "could perform" other representative medium work jobs in the national economy such as an "order puller" and "counter supply worker." R. at 31; *see also* R. at 60 (corroborative VE testimony). Claimant in no way challenges Judge Foresman's conclusion on this separate topic. Thus, even if the ALJ erred regarding McGuire's possible return to a patient transporter job, the distinct conclusion, on the subsequent analytical step, as to other representative jobs provides an independent basis to uphold the disability conclusion. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474-75 (6th Cir. 2003); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537-38 (6th Cir. 2001); *Her*, 203 F.3d at 391-92. McGuire does not address or dispute this.

Second, McGuire targets Judge Foresman's treatment of Dr. William Waltrip's evaluation, which (according to Claimant) says "nothing" about whether she "can lift up to 50 pounds [as] found by the ALJ." DE #8-1, at 4-5. The Court rejects this theory. There is substantial record evidence to support the ALJ's weightlifting conclusion. *See, e.g.*, R. at 75, 89, 105, 120;[4] *see also* R. at 585 & 609 (in 2013, noting McGuire did 10 repetitions at 51 pounds and used a 50-pound bowflex); 776 & 785 (indicating 50+ pound muscle testing); 1314-32 (2013 assessments). McGuire contests nothing specific about this sampling of substantial record evidence. ALJ Foresman did not purport to rely on

---

[4] No single medical source is alone necessary or conclusive in determining RFC; thus, an opinion from a non-examining consultant may be the basis for the ALJ's opinion, even if it conflicts with an examiner's. *See Blakley*, 581 F.3d at 409; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) ("To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians."); *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'"); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) ("To be sure, the ALJ's decision to give greater weight to [a consultant's] opinion was not, in and of itself, error."). McGuire challenges nothing particular about the consultants' conclusions as to weightlifting.

Waltrip's evaluation to come to the 50-pound decision. *See* R. at 29-30. Even if Waltrip's evaluation might support a diminished finding, "[t]hat there may be substantial evidence in the record to support another conclusion is irrelevant." *Walters v. Comm'r of Soc. Sec.*, 125 F.3d 525, 532 (6th Cir. 1997).[5] The Court sees no basis for this lightweight argument.[6]

McGuire, next, directs her ire toward the ALJ's treatment of Dr. Ashok Patnaik's[7] assessments. *See* DE #8-1, at 5. Judge Foresman found, after reviewing all the evidence, "that Dr. Patnaik's opinions are not generally supported in the record and appear to somewhat overstate the claimant's limitations compared to what is indicated by the claimant's treatment during the period at issue, as well as the claimant's reported activities of daily living." R. at 31. She further concluded that Patnaik's "forms are internally inconsistent" and that "the limitations do not correlate with the limitations that he opined." *Id.* "Specifically," the ALJ decried the reported "limitations regarding lifting, carrying, sitting, standing, walking, and climbing ladders or scaffolds, as indicated by examination results that do not support these limitations." *Id.* At bottom, she gave Patnaik's opinions "little weight." *Id.*

Judge Foresman's thoughtful analysis is quite defensible. There are a variety of critical, unexplained variances between Patnaik's evaluation form and the underlying

---

[5] This unswerving legal principle—that the Court does not reverse a denial of benefits as long as substantial evidence supports the decision, even if there is also substantial evidence of disability—applies equally to some of McGuire's other, broad arguments. *See, e.g.*, DE #8-1, at 3-4.

[6] And really, Waltrip only said the following as it pertains to this issue: "She should be able to lift objects of 25-30 pounds without limitation." R. at 1738. That signifies no restrictions up to 30 pounds but does not impose an upper range or discuss relative capacities as to higher weights. The Court simply notes that Claimant over-argues the Waltrip proof.

[7] McGuire spelled this provider's surname "Patnik," *see* DE #8-1, at 5, but the record indicates that "Patnaik" is correct. *See, e.g.*, R. at 1756.

medical records. *E.g.*, *compare* R. at 1750 (reporting that McGuire can walk no more than 15 minutes at a time)*, with* R. at 1759 (medical records indicating no joint tenderness, no swelling, normal gait, and normal motor strength and tone); *compare* R. at 1751 (alleging that a "physical examination" revealed "pain shoulders" and that "pushing/pulling results in increased shoulder pain")*, with* R. at 1756-65 (medical records with no such finding); *compare* R. at 1752 (alleging that McGuire can "never" balance, climb ladders or scaffolds, or crawl)*, with* R. at 1756-65 (medical records indicating nothing of the sort); *compare* R. at 1754 (stating that McGuire has "limited" ability to shop and travel without a companion)*, with* R. at 1759 (finding normal gait, normal motor strength, and normal muscle tone). The hearing record also contradicts some of these opined limits.

The ALJ also fairly construed Patnaik's prior treating record as inconsistent with the later disability assessment. *See, e.g.*, R. at 1186-1230 (*e.g.*, "no apparent distress"; "muscle strength is 5/5"; "no abnormal findings"). The doctor's subsequent treatment record, too, reasonably buttresses the administrative judge's point. *See* R. at 1796 (in 2016, essentially same status and diagnoses as prior encounters). The full record, yet still, vindicates Judge Foresman's careful treatment. *See, e.g.*, R. at 1528 (McGuire, on May 5, 2014—the very day she alleges to have become disabled—deciding "to hold off on [an] appointment" because the pain "isn't as bad"), 1738 (characterizing McGuire as "very minimally limited" with a "normal gait"), 1829-30 (in December 2016, noting that Claimant ambulated "without difficulty"), 1874 (June 2016 radiology report finding no abnormality). Such pervasive "inconsistencies . . . in medical opinions" are valid grounds

9

for rejecting reliance on the opinions. *See, e.g.*, *Gayheart*, 710 F.3d at 380. The ALJ defensibly chose that path here.

The sharp and unexplained variance between the two Patnaik assessments from September of 2015 rationally impacted the ALJ. The first one squares, as to weight limits, with the medium work definition. The second one, a mere 15 days later, sharply alters the proposed limits both as to weight tolerances and as to durational capacities for standing, walking, and sitting. The ALJ seized on the inconsistencies and lack of justification as a reason to discount Patnaik's overall view.

Additionally, McGuire's self-reported activities of daily living rationally contributed to the ALJ's conclusion. Claimant, for instance, indicated that she watches TV, calls other people, makes her bed, cleans her home, checks Facebook, has and prepares regular meals, showers, reads, helps with Relay for Life, goes outside daily, drives a car, and independently shops for groceries. *See* R. at 259-63. She even feeds her mother's chickens. *See* R. at 53. These are all proper considerations—to include issues of overall consistency—in assessing disability. *See, e.g.*, *Warner*, 375 F.3d at 392; *Walters*, 127 F.3d at 531; *Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 376 (6th Cir. 2017). Judge Foresman's analysis was, per this review, adequately justified, in all respects. Claimant identifies no basis to reverse the ALJ's treatment of Dr. Patnaik's assessments.

Finally, McGuire contends that the ALJ "totally ignored the Plaintiff's testimony, the documentation she filled out early in the case[,] and the job description of transporter[.]" DE #8-1, at 8. The Court rejected the argument concerning "the job description of the transporter" above. McGuire's other two sub-contentions are wrong. The ALJ, rather than "totally ignor[ing]" Claimant's testimony, specifically cited and

considered it while formulating the RFC. *See* R. at 26. A like reaction meets the theory that Judge Foresman ignored early case documents. *See id.* (ALJ citing and considering documents that existed at the time "the claimant filed her claim for disability"); *see also* R. at 21 (ALJ confirming she considered "all the evidence"). Claimant makes no argument concerning the ALJ's particular treatment of her testimony or the documents—rather, simply an incorrect assertion of blanket non-consideration. McGuire also identifies nothing about an alleged disregard of her testimony, early case documentation, or the transporter job description that would invalidate the ALJ's disability determination under the applicable standard. To the extent McGuire simply wants the Court to perform a wholesale re-weighing of the proof, her conceptualization of the Court's limited role in this context is mistaken. *See Brainard*, 889 F.2d at 681 ("We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence."); *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (per curiam) ("Our task is not to reweigh the evidence.").

For these reasons, the Court rejects each of McGuire's specific complaints regarding the ALJ's analysis. Substantial evidence, including the Agency physicians, inferences from Waltrip, and at least the consonant part of Patnaik's views, supported the RFC formulation. VE testimony validated prior job facility but also supplied other qualifying medium work within the RFC. This foundation makes the ALJ's decision invulnerable to challenge under the deferential rubric.

### 2. McGuire identifies no error concerning the Grid Rules.

Although McGuire raised this as one of the two principal issues of this appeal, *see* DE #8-1, at 1, she did not mention it until *the last paragraph* of her brief. *See id.* at 8. In

total, McGuire argues that "she has met the grid rules under the Act since [her last date of work] as noted by the ALJ's specific finding of a limitation to medium level work, the requirements of her job being in excess of medium level work[,] and her inability to do that along with a high school education and 57 years or older from the date of last work forward." *Id.*

Claimant, as this excerpt reveals, does not detail the Grid Rules and identifies no case or other source supporting the argument. Accordingly, the Court holds the perfunctory, one-sentence, citation-free argument to be forfeited. *See Crumpton*, 824 F.3d at 619 n.7, *McPherson*, 125 F.3d at 995-96; *Howard*, 346 F. App'x at 52; *Reed*, 167 F.3d at 993; *Buziashvili*, 106 F.3d at 719. The Court has no obligation to mine Social Security regulations to find and apply a rule that Claimant herself declined to identify—in other words, to make and fortify McGuire's argument for her. *Cf. Pliler v. Ford*, 124 S. Ct. 2441, 2446 (2004) (noting no such duty exists even in context of *pro se* litigants). As an aside, the Grid Rules apply only at step five,[8] and the RFC finding and application ended things at step four.[9]

The Court also reiterates the ALJ's step 5 finding, premised on VE Beale's testimony, of other representative jobs that McGuire could perform—a critical decisional aspect Claimant (again) ignores. *See* R. at 31, 59-60. While the grids surely can "provide

---

[8] *See, e.g. Norwood v. Sec'y of Health & Human Servs.*, 991 F.2d 796 (6th Cir. 1993) (noting that "the ALJ went on to step five and found [that] . . . she could also perform a significant number of jobs in the national economy pursuant to [the] Grid Rules"); *Thomas v. Comm'r of Soc. Sec.*, No. 1:18-CV-00065-SKL, 2019 WL 1748512, at *9 (E.D. Tenn. Apr. 18, 2019) ("To get to the Grid Rules at step five, Plaintiff was required to [satisfy the step four showing].").

[9] And with no particular regulation cited, the Court is unable to assess exactly what McGuire contends. In any event, the substantial evidence foundation for the ALJ's decision precludes the conditional second argument McGuire casually includes.

guidance at step five," *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010), the Sixth Circuit "has held repeatedly that the testimony of a [VE] identifying specific jobs . . . that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004). Thus, in this scenario, involving such VE testimony, McGuire identifies no remediable error based on generic grid-centric criticism or nonconsideration of a grid rule. *See also, e.g.*, *Jordan*, 548 F.3d at 424-25 (remanding for the ALJ to consider "evidence other than the grids," such as "testimony from a [VE]," when "the ALJ relied solely on the grids" for the step 5 finding); *Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) (calling the grids merely "a shortcut that eliminate[s] the need for calling in [VEs]").

### III. CONCLUSION

For the reasons stated, the Court **GRANTS** DE #10, **DENIES** DE #8, and will enter a separate Judgment.

This the 26th day of July, 2019.

Signed By:
*Robert E. Wier* REW
**United States District Judge**

13